**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02802-NYW

ANNETTE JENNIFER RODRIGUEZ,

      Plaintiff,

v.

NANCY A. BERRYHILL,*

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This civil action arises under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401–33, for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Plaintiff Annette Rodriguez's ("Plaintiff" or "Ms. Rodriguez") application for Disability Insurance Benefits ("DIB"). Pursuant to the Order of Reference dated May 8, 2017 [#22],[1] this civil action was assigned to this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing [#17; #18], the entire case file, the Administrative Record, and the applicable

---

\* This action was originally filed against Carolyn Colvin, as Commissioner of the Social Security Administration. Commissioner Berryhill succeeded Commissioner Colvin as Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, this court automatically substitutes Acting Commissioner Berryhill as Defendant in this matter.

[1] For consistency and ease of reference, this Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file, using the convention [#___]. For the Administrative Record, the court refers to ECF docket number, but the page number associated with the Record, which is found in the bottom right-hand corner of the page. For documents outside of the Administrative Record, the court refers to the ECF docket number and the page number assigned in the top header by the ECF system.

case law, I respectfully REVERSE the Commissioner's decision and REMAND for further proceedings.

## BACKGROUND

This case arises from Plaintiff's application for DIB filed on or about June 10, 2013. [#14-2 at 13; #14-3 at 119–26; #14-6 at 289–92]. Ms. Rodriguez completed eleventh grade, and did not receive a General Equivalency Diploma ("GED"). *See* [#14-2 at 60]. Plaintiff alleges she became disabled on April 9, 2013, one day after an Administrative Law Judge ("ALJ") denied her previous application for DIB [#14-3 at 97–118], due to thyroid problems, anxiety, depression, chronic headaches, and fibromyalgia ("FM"), *see* [#14-2 at 13; #14-3 at 120]. Ms. Rodriguez was thirty-six years old at the date of onset of her claimed disability. [#14-3 at 120].

The Colorado Department of Human Services denied Plaintiff's application administratively on or about December 27, 2013. *See* [*id.* at 119]. Ms. Rodriguez timely filed a request for a hearing before an ALJ on January 23, 2014. *See* [#14-4 at 201]. ALJ Patricia E. Hartman (the "ALJ") convened a hearing on January 27, 2015. [#14-2 at 54, 56]. Attorney Bradford D. Myler represented Ms. Rodriguez at the hearing, and the ALJ received testimony from Plaintiff and Vocation Expert ("VE") Deborah Christensen. *See* [*id.* at 13].

At the hearing, Plaintiff testified that she lives in a house with her four children and her grandson. *See* [*id.* at 59–60]. Plaintiff explained that she derives a small amount of income from her part-time job as a customer service telemarketer with Arc Thrift Stores; she began working for Arc Thrift Stores in or around May 2012. [*Id.* at 60–61]. She testified that she works roughly twenty-one (21) hours per week, working four (4) hours at a time; however, she stated that sitting for the four-hour workday causes significant back pain, and that she could not work full-time because of her anxiety and back pain. *See* [*id.* at 61, 63, 74].

Regarding her physical ailments, Ms. Rodriguez testified that her issues with sitting began approximately six (6) months prior to the hearing due to a bulged disc, among other abnormalities. [*Id.* at 63]. Plaintiff explained she has constantly dealt with lower back pain, but it was only recently that she sought treatment, including spine injections, for the pain. [*Id.* at 63, 71]. Ms. Rodriguez stated that the spine injections helped alleviate some pain on "left side but not [her] right side," and that she was awaiting further treatment options from her doctors. [*Id.*]. Plaintiff also testified that she tried physical therapy for her lower back pain, which helped somewhat, but that she was awaiting further instruction from her doctor before starting it again. [*Id.* at 64]. More recently, Plaintiff has experienced constant right hip pain, which her doctors think may be related to her lower back and which may require surgery, as well as constant right leg pain, including numbness. [*Id.* at 72, 74]. Plaintiff then testified to severe daily migraine headaches that can last the whole day or a couple of hours depending on their severity; at least four (4) times per month, Plaintiff's migraine headaches are so severe that she becomes too ill to work. *See* [*id.* at 75–76]. Plaintiff also noted "burning pain through [her] body all the time" because of FM. [*Id.* at 76].

When asked what aggravates her back pain, Ms. Rodriguez responded "sitting or walking," but that lying down with a heating pad and elevating her leg helped alleviate her pain. [*Id.* at 66, 74]. On her good days, Plaintiff's pain is around 5-6 out of 10, and 9 out of 10 on her bad days—usually when she gets home from work and has been sitting too long. [*Id.* at 66, 73]. Plaintiff primarily takes Motrin once a day for her lower back pain, with little relief, and once had a prescription for Norco that also did not help much. [*Id.* at 64, 72–73]. She also tried Topamax and Imetrex for her migraine headaches, but neither provided much relief [*id.*at 75–76], and she currently takes Gabapentin for her FM [*id.* at 76]. Ms. Rodriguez also testified that

she could only sit, stand, or walk for about forty-five (45) minutes due to her back pain; that she could carry/lift only ten (10) pounds; and that her back pain made it difficult for her to sleep at night.  [*Id.* at 66–68].

As to her mental impairments, Plaintiff testified to having problems with anxiety that began 3-4 years ago.  [*Id.* at 64].  Plaintiff explained that her anxiety typically stems from going to places with lots of people and crowds.  [*Id.* at 65].  For her anxiety, Plaintiff takes the medication Lorazepam, which helps alleviate her anxiety, and that she sees a therapist once a week.  [*Id.* at 64, 65].  Ms. Rodriguez was hospitalized once due to an anxiety attack.  [*Id.* at 65].

Despite her ailments, Plaintiff testified that she drives "maybe a couple miles a day" [*id.* at 60]; that she has no issues with daily grooming [*id.* at 69]; that she cooks only "a fast meal for [her] kids" [*id.*]; that she does the dishes, vacuuming, laundry, and grocery shopping a few times per week [*id.*]; that she does not do yard work or take out the trash [*id.*]; that she pays bills [*id.*]; and that does not walk and had to give up playing basketball with her children [*id.*at 70–71].  Socially, Plaintiff stated she does not attend religious observations; she visits her parents twice per month; she goes to the movies once per month; she goes out to eat twice per month; and she does not volunteer.  [*Id.* at 70].

A VE also testified at the hearing.  The VE first summarized Ms. Rodriguez's relevant past work experience as a Customer Service Representative—a specific vocational preparation ("SVP")[2] level 5 sedentary exertion job.  *See* [*id.* at 78].  The VE was then asked to consider an

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION

individual who could perform work at all exertional levels, but could not climb ladders and scaffolds; could frequently stoop, kneel, crouch, and crawl; and was limited to SVP level 4 work, but could tolerate few changes in routine work setting with frequent interaction with supervisors, coworkers, and the public. [*Id.* at 78]. In response, the VE testified that such an individual could not perform Ms. Rodriguez's prior relevant work. [*Id.* at 78]. However, the VE continued that such an individual could perform the jobs of cleaner, housekeeping a SVP level 2 light exertion job; a kitchen helper a SVP level 2 medium exertion job; and a commercial cleaner a SVP level 2 heavy exertion job. [*Id.* at 78–79]. In response to questioning from Plaintiff's counsel, the VE stated that the amount of off-task time that would affect an individual's employment was "greater than 15 percent," and that the typical absentee rate is "one to two days monthly[.]" [*Id.* at 79]. The VE stated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). [*Id.*].

At the conclusion of the hearing, Plaintiff's counsel requested a consultative examination, given that the previous consultative examination was conducted in 2012—before an MRI revealed "nerve root compression." [*Id.* at 80]. The ALJ took the request under advisement. [*Id.*]. On March 20, 2015, the ALJ issued a decision finding Ms. Rodriguez not disabled under the Act and denying her request for a consultative examination. [#14-2 at 13, 23]. Plaintiff requested Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. [*Id.* at 1–4, 8–9]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on November 17, 2016, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

---

163 (Fig. 10-8) (2003). SVP level 3-4 is associated with semi-skilled work. https://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html.

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *accord Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)). The court may not reverse an ALJ simply because she may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). However, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court may not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

## ANALYSIS

### I.    The ALJ's Decision

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). Additionally, the claimant must prove she was disabled prior to her date last insured. *Flaherty*, 515 F.3d at 1069.

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4)(v). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decisionmaker proceeds to step 3. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines the maximum amount of work the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability."

*Williams*, 844 F.2d at 751; *see also id.* at 751–52 (explaining the decisionmaker must consider both the claimant's exertional and nonexertional limitations). The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120. The Commissioner can meet her burden by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99, 1101 (9th Cir. 1999).

The ALJ found that Ms. Rodriguez was insured for DIB through March 31, 2017. [#14-2 at 16]. Next, following the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 9, 2013. [*Id.*]. At step two, the ALJ determined Ms. Rodriguez had the following severe impairments: major depressive disorder, posttraumatic stress disorder, anxiety disorder, dysthymic disorder, and pain due to psychological factors and a general medical condition. [*Id.* at 17]. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). [*Id.*]. The ALJ then determined Plaintiff had the RFC to work at all exertional levels subject to some limitations [*id.* at 18], and, at step four, concluded Ms. Rodriguez could not perform any of her past relevant work, [*id.* at 22]. At step five, considering Plaintiff's age, education, work experience, and RFC,

the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [*Id.*].

On appeal, Ms. Rodriguez raises two issues regarding the ALJ's decision: (1) the ALJ erred at step two in assessing the severity Plaintiff's FM and degenerative disc disease; and (2) the ALJ erred in assessing Plaintiff's RFC. [#17]. Because the court concludes that the first issue necessitates remand, it focuses solely on that issue.

## II.     Step Two

As explained, at step two the Commissioner determines whether a claimant has any severe physical or mental impairments. *See Williams*, 844 F.2d at 750. "To find a 'severe' impairment at step two requires only a threshold showing that the claimant's impairment has 'more than a minimal effect on [her] ability to do basic work activities.'" *Covington v. Colvin*, 678 F. App'x 660, 664 (10th Cir. 2017) (quoting *Williams*, 844 F.2d at 751). But "the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

Here, Plaintiff takes issue with the ALJ's consideration of her FM and degenerative disc disease at step two, arguing the ALJ should have found Ms. Rodriguez's FM a medically determinable impairment under Social Security Ruling ("SSR") 12-2p and should have found her degenerative disc disease to be a severe impairment. [#17 at 11–16]. The Commissioner responds that the ALJ properly considered both impairments and the limitations attributable to either at step two. [#18 at 6]. Further, the Commissioner asserts that any error at step two is harmless, given that the ALJ went on to consider both impairments when formulating Plaintiff's RFC. [*Id.* at 7–12].

As to Plaintiff's degenerative disc disease, the court respectfully agrees with the Commissioner that any error in finding this impairment non-severe is immaterial. In *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016), the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") explained at step two "a claimant need only establish, and an ALJ need only find, one severe impairment[,]" as a finding of one severe impairment requires the ALJ to proceed to the next step, considering *all* of the claimant's ailments (severe or not) anew. "Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds at least one other impairment is severe." *Id.*; *see also Smith v. Colvin*, 821 F.3d 1264, 1266–67 (10th Cir. 2016) (holding as harmless error the ALJ's failure to find a severe left shoulder impairment at step two when the ALJ considered shoulder impairments in assessing the plaintiff's RFC); *Howard v. Berryhill*, No. 17-CV-00276-RBJ, 2017 WL 5507961, at *4 (D. Colo. Nov. 17, 2017) ("While it certainly would have been prudent for the ALJ to consider Ms. Howard's chronic pain syndrome diagnosis at step two . . . the ALJ's failure to do so is not reversible error under *Allman* because she determined that two of Ms. Howard's other impairments were severe."). Here, "the ALJ found five severe impairments and proceeded with the analysis as required[,]" *Troe v. Berryhill*, No. 16-CV-02794-MEH, 2017 WL 2333101, at *7 (D. Colo. May 30, 2017) (relying on *Allman*, 813 F.3d at 1330); indeed, the ALJ spends great lengths discussing Plaintiff's back ailments when formulating her RFC. Thus, the ALJ did not err at step two by failing to find Plaintiff's degenerative disc disease severe.

However, regarding Plaintiff's FM, there is some ambiguity as to whether the ALJ found this impairment to be non-severe or whether she concluded it was *not* a medically determinable impairment. For example, at step two the ALJ highlighted the existence of complaints and treatment records for FM, among others, but concluded, "these complaints have not been

documented with objective medical signs and diagnostic findings sufficient to establish the existence of enduring medical impairments, significantly compromising the claimant's [RFC] since the alleged disability onset date." *See* [#14-2 at 17]. When formulating Plaintiff's RFC, the ALJ then concluded that evidence of FM was "not sufficient to establish [FM] as a *medically determinable impairment*." [*Id.* at 21 (emphasis added)]. This distinction is particularly important, as the ALJ must consider only *medically determinable impairments* (severe or not) at subsequent steps. *See Cook v. Colvin*, No. CV 15-1164-JWL, 2016 WL 1312520, at *4 (D. Kan. Apr. 4, 2016) ("Limitations attributed to impairments which are medically determinable but are not severe must be considered at later steps in the evaluation, whereas alleged limitations attributable to impairments which are not medically determinable must not be considered at later steps."). And although the ALJ, at times, considered Plaintiff's FM during the RFC assessment, I agree with Plaintiff that the ALJ's conclusion that FM is not a medically determinable impairment is not supported by substantial evidence.

A.      **Standard to Evaluate Medically Determinable Impairments**

Plaintiff bears the burden of establishing a severe medically determinable impairment at Step two. 20 C.F.R. § 404.1520(a)(4)(ii). "The step two severity determination is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (citation and internal quotation marks omitted). While this showing is de minimis, Plaintiff must do more than show the mere presence of a condition or ailment. *See Rabon v. Astrue*, 464 F. App'x 732, 734 (10th Cir. 2012); *see also* SSR 85-28, 1985 WL 56856 at *3 (providing that a step-two finding of "non-severe" impairment is only to be made where "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have

no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"). In doing so, Ms. Rodriguez must proffer medical evidence, consisting of "signs, symptoms, and laboratory findings," demonstrating a physical impairment resulting from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

Relevant here, FM is a "rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). "It is a chronic condition, causing 'long-term but variable levels of muscle and joint pain, stiffness and fatigue.'" *Brown v. Barnhart*, 182 F. App'x 771, 773 n.1 (10th Cir. 2006) (quoting *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n. 1 (8th Cir. 2003)). There are no objective clinical tests to detect its presence, "[i]ts causes are unknown [and] there is no cure, and, of greatest importance . . . its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness," and "multiple tender spots . . . that when pressed firmly cause the patient to flinch."). "Because proving the disease is difficult, fibromyalgia presents a conundrum for insurers and courts evaluating disability claims." *Welch v. Unum Life Ins. Co. Of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) (citations, ellipsis, and internal quotation marks omitted).

FM will be found to be a medically determinable impairment if diagnosed by a physician and supported by the record—a diagnosis alone is insufficient. SSR 12-2p provides the criteria that will support a diagnosis of FM. *See* SSR 12-2p, 2012 WL 3104869, at *2–3 (July 25, 2012). Applicable here, section II.B. provides that a finding of FM as a medically determinable

impairment is warranted when the medical evidence demonstrates (1) a history of widespread pain; (2) repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety, or irritable bowel syndrome; and (3) evidence that other disorders that could cause such repeated manifestations were excluded. *Id.* at *3. SSR 12-2p emphasizes the importance of considering the "longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" *Id.* at *6.

At step two, the ALJ concluded Plaintiff's FM had "not been documented with objective medical signs and diagnostic findings sufficient to establish the existence of enduring medical impairments[.]" [#14-2 at 17]. In assessing Plaintiff's RFC, the ALJ noted Ms. Rodriguez was "seen for diffuse joint and muscle pain in May 2013, when she was diagnosed non-specifically with 'myalgias'", but, "[i]mportantly, no exams showed specific [FM] tender points." [*Id.* at 20]. The ALJ also concluded, "[a]lthough Ms. Nunez reported that the claimant had been diagnosed at [Denver Health Medical Center ("DHMC")] with [FM], she did not cite any objective support, and a review of the clinical treatment records at DHMC does not show any objective findings supportive of [FM]"; thus, the medical evidence did not establish FM "as a medically determinable impairment." [*Id.* at 21].

Plaintiff contends the ALJ erred at step two by failing to consider FM under the criteria of section II.B. [#17 at 12]. According to Plaintiff, "the medical evidence of record supports the diagnosis of FM and meets the criteria set out in SSR 12-2p II.B." [*Id.* at 13]. Defendant counters that the ALJ committed no such error, because no acceptable medical source ever diagnosed Plaintiff with FM, nor does the record reasonably support such a diagnosis. *See* [#18

at 8–9].  Further, according to the Commissioner, any error at step two was harmless, as the ALJ discussed Plaintiff's complaints of pain in the RFC assessment, and it is "immaterial whether those symptoms were caused by [FM], or a general medical condition, as Plaintiff did not differentiate between the causes of her pain and the functional limitations are the same whether the pain was caused by [FM] or other myalgias."  [*Id.* at 9].  Respectfully, the court agrees with Plaintiff that the ALJ's failure to consider FM under section II.B. constitutes reversible error at step two, an error that later may have impacted the RFC assessment.  *See Paulson v. Colvin*, No. CIV.A. 12-CV-01979, 2013 WL 4046692, at *4 (D. Colo. Aug. 9, 2013) (remanding to the ALJ for failure to consider the claimant's FM under section II.B., noting that such a failure could impact the ALJ's RFC assessment on remand).

### B.    The Medical Evidence

The court now considers the medical evidence within the context of section II.B.'s three criterion.  Based on a review of the medical record, I conclude that the ALJ's finding that FM was not a medically determinable impairment is not supported by substantial evidence.

***Diagnosis of FM:***  To begin, the ALJ concluded that DHMC treatment notes only vaguely diagnosed Plaintiff with non-specific myalgias, but no exams showed specific FM tender points.  [#14-2 at 20].  The ALJ later concluded that, although Ms. Nunez reported a diagnosis of FM, nothing in the record supported such a diagnosis.  [*Id.* at 21].  Focusing on this reasoning, the Commissioner argues, at length, that the ALJ did not error at step two because Plaintiff was never diagnosed with FM.  *See* [#18 at 7].  Defendant avers, "the fact is that there was no diagnosis [of FM] . . . . The absence of a diagnosis is fatal to Plaintiff's claims that she had [FM], as the ALJ was not in the position to substitute his [sic] opinion for that of the medical sources."  [*Id.* at 7–8]; *see also* [*id.* at 9 (arguing that the record contained only a mention of a

FM diagnosis, and that no acceptable medical source ever diagnosed FM)]. This, however, is untrue.

On July 8, 2013, Ms. Rodriguez saw Dr. Joel Hirsh, a board certified Rheumatologist, at the DHMC Rheumatology Clinics. [#14-12 at 802]; *see also* SSR 12-2p, 2012 WL 3104869, at *2 (deeming a licensed physician as "the only acceptable medical source" who can provide a FM diagnosis). Dr. Hirsh reported that Plaintiff complained of body aches and constant burning throughout her body. [*Id.*]. He explained, "Ms. Rodriguez reports a long [history] of diffuse body pain that is throbbing and worse [with] activity. Pain is associated [with] fatigue, depression, and poor sleep." [*Id.* at 803]. Dr. Hirsh also noted that Ms. Rodriguez experienced increased burning pain over the last several months with no relief from non-prescription pain relievers. [*Id.*].

Upon physical examination, Dr. Hirsh identified fifteen (15) out of eighteen (18) tender points, though he did not specify where those fifteen (15) tender points were located on Ms. Rodriguez's body. *See* [*id.*]. Under the "Assessment/Plan" heading of his report, Dr. Hirsh first identified "FMS" or fibromyalgia syndrome, and opined, "there is little to suggest [Plaintiff's] body pain . . . would respond to immunosuppression[.]" [*Id.*]. Dr. Hirsh went on to prescribe Gabapentin, a medication typically used to treat FM. [*Id.*]; *see also* FIBROMYALGIA TREATMENT: IS NEURONTIN EFFECTIVE?, https://www.mayoclinic.org/diseases-conditions/fibromyalgia/expert-answers/fibromyalgia-treatment/faq-20058273 (last visited Dec. 22, 2017).

Neither the ALJ nor the Commissioner discusses this evidence when addressing Ms. Rodriguez's FM. *See Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007) ("Although an ALJ need not discuss every piece of evidence, the record here fails to demonstrate that the ALJ considered all of the evidence with respect to Ms. Gilbert's fibromyalgia."). And as highlighted

below, a review of the medical record supports Dr. Hirsh's diagnosis under section II.B., thereby requiring a second examination by the ALJ of Plaintiff's FM on remand.[3] *See Parks v. Colvin*, No. 13-CV-01307-RBJ, 2015 WL 1064177, at *4 (D. Colo. Mar. 9, 2015) (remanding to the ALJ for reconsideration of a consultative examiner's opinion that the plaintiff exhibited fourteen (14) out of eighteen (18) tender points, consistent with a diagnosis of FM, despite the ALJ's conclusion that objective evidence did not support FM as a medically determinable impairment).

  ***History of Widespread Pain:*** Pursuant to section II.B., the first criterion a claimant must establish to support a diagnosis of FM is a "history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted for at least 3 months." *Terrell v. Berryhill*, No. 16-CV-02566-MEH, 2017 WL 1352275, at *6 (D. Colo. Apr. 13, 2017) (ellipsis omitted) (quoting SSR 12-2p, 2012 WL 3104869, at *2–3). The Commissioner argues the record does not support a finding of a history of widespread pain, as most of the evidence Plaintiff cites pre-dates her alleged onset date, relates to abdominal pain, back pain, or migraines, but not diffuse body pain, and those records revealing a complaint of diffuse body pain are not supported by objective findings. [#18 at 8–9]. Yet, as many courts recognize, "fibromyalgia patients present no objectively alarming signs[;] [r]ather, fibromyalgia patients manifest normal muscle strength and neurological reactions and have full range of motion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243–44 (6th Cir. 2007) (citations and internal quotation marks omitted). Thus, any absence of objective evidence corroborating Ms. Rodriguez's complaints of body aches and pains is not necessarily fatal to her

---

[3] The court also notes that upon reconsideration of Dr. Hirsh's treatment notes on remand, it is the ALJ's duty to re-contact medical sources to supplement or clarify evidence regarding Ms. Rodriguez's FM should the ALJ conclude that this evidence is inadequate to determine whether Plaintiff's FM is disabling. *See Maes v. Astrue*, 522 F.3d 1093, 1097–98 (10th Cir. 2008).

claim that her FM is a medically determinable impairment. *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d. Cir. 2003) (holding as error the ALJ's rejection of a diagnosis of FM due to a lack of objective evidence, because such a conclusion required "'objective' evidence for a disease that eludes such measurement.").

Nor does the court agree that a history of widespread pain requires only medical evidence of diffuse body pain, as a fair reading of SSR 12-2p reveals no such requirement. Rather, the record reveals complaints of pain in all quadrants of the body and axial skeletal pain, albeit not always at the same time. For example, on May 16, 2013, DHMC treatment notes report Plaintiff's complaints of diffuse body pain, with pain in her muscles and joints—pain that felt like "burning." [#14-12 at 812]. DHMC treatment notes dated June 11, 2013, reveal that Plaintiff presented to the emergency room a week earlier for her sudden onset of pelvic and lower back pain, and that she still had pain despite prescription-strength pain medications. *See* [*id.* at 807; #14-15 at 968–75 (emergency room records of Plaintiff's June 4, 2013 visit, detailing abdominal pain radiating into her low back)]. On June 26, 2013, Plaintiff again presented to the emergency room, complaining of severe flank pain radiating into her lower back. [#14-15 at 953–962]. On July 8, 2013, as discussed, Plaintiff saw Dr. Hirsch and complained of diffuse body pain and constant, burning body aching that had increased in severity over the past months. [#14-12 at 802–03]. Plaintiff returned to DHMC complaining of "ongoing back pain" and left leg pain—pain she described as sharp and radiating throughout her entire leg. [*Id.* at 794]. This being a little more than a week after presenting to the emergency room complaining of lower extremity pain that radiated to her left knee, calf, and lower back. [#14-15 at 944–951].

The above evidence alone is sufficient to suggest a history of widespread pain persisting at least three months since Plaintiff's alleged onset date. This evidence, however, is only a

portion of evidence regarding Plaintiff's widespread pain. DHMC treatment notes dated September, October, November, and December 2013, reveal complaints of constant pelvic, back, leg, abdomen, and hip pain. *E.g.*, [#14-12 at 773, 774, 775, 778, 782–83; #14-13 at 860]. Plaintiff also presented to the emergency room on December 13, 2013, complaining of flank pain that waxed and waned, but was sharp and radiated into her left hip, thigh, knee, calf, and foot. [#14-15 at 933]. Treatment records and emergency room reports from 2014 and 2015 confirm that Plaintiff repeatedly reported symptoms of pain in various parts of her body. *See, e.g.*, [#14-14 at 865, 869, 871, 877, 878, 905; #14-15 at 911, 927; #14-16 at 987, 1000, 1038, 1041, 1043, 1048, 1050, 1052, 1054].

***Evidence of Repeated Manifestations***: Second, Ms. Rodriguez argues, "she has experienced repeated manifestations of at least six FM symptoms, signs, or co-occurring conditions[.]" [#17 at 13 (listing Plaintiff's symptoms, signs, and co-occurring conditions)]. I respectfully agree.

As noted, the second criterion under section II.B. requires repeated manifestations of symptoms, signs, or co-occurring conditions of FM, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." SSR 12-2p, 2012 WL 3104869, at *3 (footnote omitted). Signs of FM include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, chest pain, numbness or tingling, dizziness, insomnia, and depression, to name a few. *See id.* at *3 n. 9. Relatedly, co-occurring conditions include, *inter alia*, depression, anxiety disorder, chronic fatigue syndrome, and migraines. *See id.* at *3 n.10.

Here, the Administrative Record[4] reveals repeated manifestations of fatigue, *see, e.g.*, [#14-12 at 794, 803, 813; #14-14 at 876, 877; #14-16 at 1000]; headaches and/or migraines, *see, e.g.*, [#14-12 at 813, 815, 816, 817, 819]; depression, *see, e.g.*, [*id.* at 788, 794, 803, 812, 813, 816; #14-13 at 826, 827, 829, 830, 831]; anxiety, *see, e.g.*, [#14-12 at 815; #14-13 at 829, 830, 831]; insomnia, *see, e.g.*, [#14-12 at 815; #14-13 at 827, 829, 830, 831]; and pain or cramps in the abdomen, *see, e.g.*, [#14-12 at 773, 782; #14-15 at 953, 958, 968]. The Commissioner does not contest Plaintiff's arguments on this point. Nor did the ALJ consider much of this evidence other than to conclude that Plaintiff's complaints of disabling pain are not entirely credible. [#14-2 at 19, 22]; *but see Brown*, 182 F. App'x at 774 ("[T]he ALJ's determination that Brown was not totally credible with respect to her physical limitations is made problematic by his refusal to consider her fibromyalgia."). On remand, the ALJ should examine and address the record evidence of Ms. Rodriguez's repeated manifestations of FM symptoms, signs, or co-occurring conditions.

***Evidence of Excluded Disorders:*** Finally, a diagnosis of FM will be found to be a medically determinable impairment if other disorders that could cause the repeated manifestations identified above were excluded. SSR 12-2p, 2012 WL 3104869, at *3. These "other disorders" include "rheumatologic disorders, myofacial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders." *Id.* at *3 n. 7.

Plaintiff argues, "the evidence of record indicates that other disorders . . . were in the process of being excluded throughout the relevant period." [#17 at 13]. Defendant maintains

---

[4] Though some of this evidence pre-dates Plaintiff's alleged onset date it is nonetheless relevant to a claim of disability and should be considered. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).

just the opposite: there was never any diagnosis of FM "perhaps because there was no evidence of one of the requirements for a valid diagnosis, i.e., that other causes were excluded." [#18 at 7–8]. Again, the court respectfully disagrees.

To start, the court notes that evidence sufficient to satisfy this criterion does not require "definitive statements from treating or other physicians expressly excluding other disorders." *Smith v. Colvin*, No. 1:15-CV-02033-CBS, 2016 WL 5956160, at *5 n.7 (D. Colo. Oct. 14, 2016). Rather, laboratory testing may include imaging and other tests for complete blood counts, anti-nuclear antibody ("ANA"), and rheumatoid factor, among others. *See* SSR 12-2p, 2012 WL 3104869, at *3. The record before the court contains evidence that other disorders were excluded. For example, Plaintiff had negative ANA and rheumatoid factor tests, *see* [#14-12 at 810; #14-13 at 847]; largely normal MRIs, X-rays, and CT scans of the lumbar spine, with only mildly worsening symptoms, *see, e.g.*, [#14-12 at 789–90; #14-15 at 945, 969; #14-16 at 983–84, 986, 1045, 1046, 1052]; and normal ultrasounds and CT scans of the abdomen, pelvis, chest, thorax, and lower extremities, *see, e.g.*, [#14-14 at 880–81, 888; #14-15 at 915, 922, 936, 945, 946, 950, 954, 955, 966, 967; #14-16 at 1004, 1011]. *See Smith*, 2016 WL 5956160, at *5 (holding that similar evidence sufficed to show that other disorders were excluded). Indeed, the ALJ focuses on the largely normal laboratory testing results concerning Plaintiff's lumbar spine in concluding that Plaintiff does not suffer from any physical limitations. *See* [#14-2 at 20, 21]. Yet, as mentioned, "it is the absence of symptoms ordinarily associated with joint and muscle pain that is one of the most striking aspects of [FM]," *Moore v. Barnhart*, 114 F. App'x 983, 992 (10th Cir. 2004), and, although the objective testing may reveal no significant abnormalities or limitations, this does not equate to a lack of evidentiary support for a diagnosis of FM, *see Oor v. Astrue*, No. CIVA 07-CV-00883-WYD, 2008 WL 4371940, at *3 (D. Colo. Sept. 23, 2008)

("[T]he Tenth Circuit has made clear that it is improper to reject findings as to fibromyalgia based on the fact that they are not established by formal clinical signs or laboratory tests.").

*** 

Based on the above discussion, the ALJ's conclusion at Step two that Plaintiff's FM was not a medically determinable impairment is not supported by substantial evidence. Nor is the error harmless as the Commissioner insists. Although the ALJ mentions Plaintiff's FM in her RFC assessment, the failure to consider the evidence recounted above leads the court to conclude that the ALJ's RFC analysis will likely be impacted on remand. *See Paulson*, 2013 WL 4046692, at *4. Also for this reason, the court declines to address Plaintiff's remaining challenges to the ALJ's RFC assessment as these, too, may be impacted on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## CONCLUSION

For the reasons stated herein, the court hereby **REVERSES** the Commissioner's final decision and **REMANDS** this matter to the ALJ for further proceedings consistent with this Memorandum Opinion and Order.

DATED: January 12, 2018                    BY THE COURT:

                                                     s/Nina Y. Wang
                                                     United States Magistrate Judge